# THE STATE ex rel. J. W. HEDDENS et al. v. W. D. RUSK, Judge.

**In Banc, July 3, 1911.**

1. **CHARITABLE USE: Public Trust: Control by Chancery.** A court of equity has jurisdiction over a charitable use, a public trust, created by a will; but it has no authority, without a suit directed to that end, to make orders and decrees controlling, regulating and managing such trust. A chancellor cannot proceed in that behalf *ex mero motu*, nor may he substitute his own judicial power or discretion for the discretion or power of the trustees in whom the creator of the public trust vested the title of the property devoted to the charitable use and lodged the powers of management, supervision and control.

2. ————: ————: ————: **How Invoked and What For.** Whenever the power of a court of equity is invoked to construe a trust instrument, or to restrain an abuse of power on the part of the trustees, or to correct a negligent performance of duty whereby the trust estate is put in peril or diverted, or to remove or suspend an unfaithful trustee, or to protect and conserve the corpus of the trust estate from being dissipated or lost, the chancellor may move only at the instance of the Attorney-General who moves on behalf of the people or at the instance of some other party, and then he can grant relief only on due process of law whereby parties are given their day in court.

3. ————: ————: ————: **Auditing Committee, Etc.** The appointment by the court of its own motion of an auditing committee of the trust estate, with a view to exercising supervision and management thereof, is without rightful jurisdiction.

4. ————: ————: ————: **Creature of Donor.** Where the will created a trust estate and committed it to certain trustees named therein, and directed how it should be invested and used, the testator's plan must be pursued, and whether it be wise or unwise a court of equity has no authority of its own motion to undertake to substitute its own management and supervision.

5. ————: ————: ————: **In Pursuance to Prior Order.** Nor is a prior order of the circuit court directing the trustees annually to report the financial condition of the institution established in pursuance to the will, itself outside the pleadings and not within their purview, any authority for a future order made by the court of its own motion and having for its purpose the management and supervision of that institution and its financial affairs, although no objection was made to the first order and the trustees complied therewith.

6. **PROHIBITION: Costs.** Where the judge acted in his judicial capacity and made an order in excess of the court's jurisdiction, the costs of a writ of prohibition will not be taxed against him. It is necessary to the independence of the judiciary that judges be not put in peril in that way.

## PROHIBITION.

WRIT ISSUED.

*Ben J. Woodson* for relators.

(1) Respondent had no jurisdiction to make the orders and this case is on all fours with the case of State ex rel. v. Muench, 217 Mo. 124. (2) In its more general sense, the term jurisdiction when applied to a court is the power residing in such court to determine judicially a given action, controversy, or question presented to it for decision. If this power does not exist with reference to any particular case, its determination by the court is an absolute nullity. Bingham v. Henrici, 16 Atl. 618; Bassick Co. v. Schoolfield, 10 Colo. 46; State v. Stanton, 6 Wall. 50; Luther v. Burden, 7 How. 1; Fletcher v. Tuttle, 150 Ill. 41; Kerfoot v. People, 51 Ill. App. 409; Dicey v. Reed, 78 Ill. 206; U. S. v. Arredondo, 6 Pet. 709; People v. Liscomb, 60 N. Y. 559; Reynolds v. Stockton, 140 U. S. 254; Munday v. Vail, 34 N. J. L. 418; Jacobson v. Miller, 41 Mich. 90; Cromwell v. Sac. Co., 94 U. S. 351; Hope v. Blair, 105 Mo. 93; State ex rel. v. Muench, 217 Mo. 124. The issue made by the pleadings was fully and finally determined in January, 1908. None of the parties was ever properly or legally in court after the entry of the decree in said cases. After the final decree, the defendants were all out of court and could be brought in only by original process or a personal waiver of process. Every order made by the circuit court after the final decree was without jurisdiction over either the subject-matter of

the suit or the parties, and was absolutely null and void. (3) The writ of prohibition is available to keep a court within the limits of its lawful power in a given case, no less than to prevent its cognizance of causes not committed by law to its jurisdiction. State ex rel. v. Slover, 126 Mo. 652; State ex rel. v. Elkin, 130 Mo. 90; Railroad v. Weal, 135 Mo. 230; State ex rel. v. Wood, 155 Mo. 425.

*C. A. Mosman* for respondent.

(1) Relators no where in their application give the slightest intimation of the application made by the trustees to the trial court for power to borrow money for the purposes of the trust. They only say that all orders made by the court "were made in compliance with said petition filed in said case except the following," (reciting order to which they object). How could an order authorizing the trustees to borrow $25,000 and mortgage the trust fund be made on a petition "praying to change the name . . . and for that purpose only and none other?" Respondent himself feels somewhat mystified by such a presentation of the petition. (2) Relators by their petition apparently strive to frame a case squarely within State ex rel. v. Muench, 217 Mo. 124. But the actual facts when known show them entitled to the same decision as in State ex rel. v. Muench, 130 S. W. 282, at the hands of this court. (3) The petition of the relators, filed Feb. 25, 1908, was a perfectly proper petition for trustees of a trust fund devoted to a charitable use, to present to the lower court, as a court of equity. They showed the impossibility of carrying out the testator's wishes, on the lines he had laid down, with the funds at their command, and under the new laws regulating medical schools and hospitals, and that the trust must fail unless the court empower them to borrow money and mortgage the property. Lackland v. Walker, 151

Mo. 242. The petition was not a mere notice to the parties that an application would be made for an order in a case theretofore on the docket of the court, but a formal petition reciting affirmatively every essential fact and praying for relief approximate to the facts stated. To that petition all the defendants entered their appearance in proper form, and there is no plea of any want of authority. Indeed it is the petitioners in that petition—the movents—who here complain. They certainly were in court. This order of the court was strictly within the prayer for general relief contained in the petition. As this was a trust devoted to a charitable use, not a private trust created for heirs and distributees, as in the McManus case (217 Mo. 124), and the Ponath case (130 S. W. 282), the public was interested that it should not fail; and as the court had authorized a proceeding that might endanger a trust devoted to a public use, the court was bound to see to it that the trust was not imperiled by the proceedings of the trustees pursuant to the powers it had granted to them. In borrowing the money and mortgaging the property to secure the payment, the trustees were acting by virtue of the powers granted to them by the court, and not by force of any power vested in them by the will of Samuel Ensworth. The court was not bound and constrained to grant them the precise relief prayed—no more, and no less. It had the right to grant the relief upon such terms and conditions as the court might deem proper to impose. Wodward v. Mastin, 106 Mo. 362; Lackland v. Walker, 151 Mo. 279. The condition or terms on which the relief was granted were perfectly germane to the relief prayed.

LAMM, J.—Prohibition. To a preliminary rule to show cause entered here on December 27, 1910, Judge Mosman made return showing, among other things, that his term of office as judge expired after

the writ issued and before its return day. Thereupon his sucessor, Judge Rusk, entered his appearance as substituted respondent and adopted his return. Thereupon the cause was submitted on a motion for judgment on the pleadings.

In brief the case is this:

In June, 1886, Samuel Ensworth executed his last will and testament, he then owning a considerable estate and making certain bequests and devises. Clause five thereof reads:

"*Fifth*. To my friends, William I. Heddens, James W. Heddens, B. R. Vineyard and Stephen C. Woodson, I give, devise and bequeath all the rest of my property, real, personal or mixed, which I may own or have any interest in at the time of my death, in trust to be converted by them into money as soon as they can conveniently do so, and out of the proceeds arising therefrom and all other money which may come into their hands belonging to my estate not required for the purposes hereinbefore provided for, to be used by my said friends, William I. Heddens, James W. Heddens, B. R. Vineyard and Stephen C. Woodson, and one other person to be selected by them in purchasing grounds for and erecting and thereafter maintaining thereon a medical college and hospital to be located in the city of St. Joseph, Buchanan county, Missouri, to be called the 'Ensworth Medical College and Hospital,' and my will and direction is that all possible aid shall be given in the assistance of deserving young men to attain a scientific knowledge of the medical profession and the relief of all suffering who may become inmates of said hospital."

The devisees named in that clause are also made executors without bond in a subsequent clause and, as executors, were donees of a power of sale. His will was proved in the probate court of Andrew county in August of that year, and subsequently was solemnly

probated in a suit, in which the issue was *devisavit vel non,* in the circuit court.

In 1905 an *ex parte* petition was filed by proper parties in the Buchanan Circuit Court for a *pro forma* decree to incorporate "The Ensworth-Central Medical College and Hospital" for 100 years, to effectuate the purposes set forth in the 5th clause of Mr. Ensworth's will. Thereby the plan was to have its affairs and property taken over and managed by seven named trustees or directors and their successors, and when organized and chartered the trustees were to take over the funds provided by and arising from said clause five and to use the same in purchasing grounds, erecting and thereafter furnishing, equipping and maintaining a medical college and hospital at St. Joseph to provide for the education of students in the science and practice of medicine and surgery and science pertaining to all branches and departments of medicine, conferring degrees upon them on graduation, to provide for the maintenance and support of said hospital, and for making suitable regulations and by-laws for both through said directors and trustees. All moneys arising from the college and hospital after paying expenses (including a reasonable compensation to the trustees "for their kind of service" and repairs and improvements and for the welfare of the college and hospital) were to be devoted to the growth and usefulness of said college and hospital.

On that petition in due time a *pro forma* decree was entered in accord with the prayer of the petition and thereafter a charter was issued by the Secretary of State as by statute provided.

In May, 1908, in the said circuit court such application was made and steps were taken on the *ex parte* application of certain officers and trustees of the corporation as resulted in changing the name of "The Ensworth-Central College and Hospital" by pretermitting the word "Central," and as made its cor-

porate name and style "The Ensworth College and Hospital,"—this to comply with the request of Mr. Ensworth in said clause five of his will, wherein he selected that name for the college and hospital.

Prior to that, in February, 1908, in the said circuit court, the trustees and directors named in the articles of association and the *pro forma* decree of incorporation, brought suit against Stephen C. Woodson, and Maggie Woodson, his wife, R. A. Heddens, W. I. Heddens, Mattie Smith, Ollie F. Clark, Mae Heddens, Vernon Heddens and Herbert S. Hadley, Attorney-General for the State of Missouri.

We infer this was a friendly suit, since the adult defendants waived service of process by summons and entered their appearance. A minor defendant, Vernon Heddens, presumably served, defended by a guardian *ad litem.*

As the suggestion for prohibition in the instant case deals with the action of the court in retaining jurisdiction of the administration of the trust after a decree on the merits in that cause, let us attend to that case with some particularity.

The petition therein alleged that Samuel Ensworth by the fifth clause of his will (heretofore set forth) devised and bequeathed to William I. and James W. Heddens, B. R. Vineyard and Stephen C. Woodson certain property in trust to be held by said parties and their successors for the purpose set forth in said clause; that the heirs of said Ensworth brought suit against said trustees, who are also executors, to contest the will, suing them as executors and trustees and as individuals, the ground of contest being mental incapacity; that the will was established by suit and a judgment by the consent of all parties was entered to the effect that all property remaining unsold one year from that date should be sold at public auction and divided between the heirs of Ensworth and said trustees, who are to use the same in the way and for the

purposes therein set forth—all of which was done; that said trustees purchased real estate in St. Joseph, and they and their sucessors about the year 1889 erected a medical college and hospital thereon, and since then have maintained and conducted the same in accordance with the will; that they took the conveyance to themselves individually and thereafter undertook to correct that inadvertence by deed made by them and their wives to said trustees *eo nomine*; that on a certain date William I. Heddens, one of the trustees, died leaving surviving him as heirs the defendants Smith, Clark and R. A., W. I., Mae and Vernon Heddens; that on a certain date Stephen C. Woodson resigned as trustee and since then has failed and refused to act; that of the original trustees only James W. Heddens is now acting; and that the other plaintiffs (except Mary B. Heddens), viz., James W. Heddens, Jacob Geiger, C. R. Woodson T. E. Potter, Thomas H. Doyle, W. T. Elam and O. B. Campbell, have been selected from time to time as vacancies occurred on the board and are now acting as trustees. The petition sets forth and shows that the buildings and equipment erected and maintained as aforesaid have become wholly inadequate and insufficient for a medical college and hospital under the requirements of the statutes pertaining to medical colleges, as the same have been changed since Samuel Ensworth's death; that at the time of his death the length of time, before graduating, a student of a medical college should attend college was not a requirement of the statute, while the law now requires an attendance of four school years; that other statutory requirements relating to equipment, apparatus, appliances, laboratories, course of study and character of buildings and improvements have grown much more rigid; that to meet such requirements, increasing expenditures have become necessary; that the statute of this State has clothed the State Board of Health with power to prescribe rules, regulations and require-

ments for the management and conduct of medical colleges in this State; that acting under its authority said Board of Health has required that the buildings of the Ensworth College and Hospital be greatly enlarged and that additional equipment, apparatus and laboratories be acquired and purchased; and that a large number of clinics be provided for the students, which clinics are impossible to procure except by increasing the capacity of the hospital; that the State Board of Health has prohibited the further maintenance of the college until said requirements are met; and that unless the requirements of said board are complied with it will be impossible to conduct the college and hospital under the law; that there are no moneys or properties belonging to the trustees except the ground and improvements thereon and the sum of $3500 in its treasury.

The premises considered, plaintiffs say that unless they are authorized to borrow money to provide the improvements, additions and equipments mentioned and to secure the payment of the same by a deed of trust upon the trust estate (said sum being approximately $25,000), the trust will be impossible of execution and will entirely fail; that while not advised as to whether the trust estate constitutes a public charity, yet on the theory that all persons may be heard who have any possible interest, Herbert S. Hadley, Attorney-General of the State, is made a party defendant as representative of the public. The prayer follows:

"Wherefore, plaintiffs pray the court to divest plaintiffs, J. W. Heddens, Mary A. Heddens, and all of the defendants (except Herbert S. Hadley) of any and all apparent interest which they have in and to the lands hereinbefore described by reason of the conveyance of the same to said William Heddens, James W. Heddens and S. C. Woodson; that if the acting trus-

236 Sup.—14

tees for said estate have not been selected as directed in said last will and testament of said Samuel Ensworth, then plaintiffs pray the court to select and appoint trustees as it may think proper to manage said trust estate in accordance with the provisions of said last will and testament; that the court construe the powers of said trustees under the terms of said will and define their duties in the premises; that said trustees be authorized and empowered to borrow sufficient money with which to enlarge said medical college and hospital by building additions thereto and purchasing new and additional equipment, and that they be authorized to execute their note as trustees for said money so borrowed, and to secure the payment of the same by deed of trust conveying all of said property in trust for said purposes, and for such further orders, judgments and decrees as the court may deem proper, the premises considered.''

It will not be necessary to set out the decree *ipsissimis verbis.* Thereafter, in February, 1908, such decree was entered on a hearing. Shortly, the chancellor found the allegations of the petition to be true, setting them forth in detail. The decree entered authorized a loan of $25,000 for the purposes set forth, to be evidenced by the note of the trustees and secured by the real estate belonging to the college and hospital, to run for not less than five nor more than ten years at six per cent interest, payble annually, $2000 of the principal to be paid annually. It was further decreed that the board of trustees be fixed at seven in number and named relators in the present suit as such trustees. The decree divested out of defendants and out of plaintiffs James W. Heddens and Mary B. Heddens any and all right, title or interest in or to the college property now in them by reason of the deed conveying the lots to William I. Heddens, James W. Heddens and Stephen C. Woodson, and vested the title in the trustees named by the decree and their succes-

sors. It was further decreed that when a vacancy occurred among the trustees, by death, resignation or removal, an application should be made to the court by the surviving trustees for the appointment of some person to fill such vacancy.

There is in the decree a further clause to this effect that the trustees were "ordered and directed during the existence of this indebtedness to report annually the financial condition of this institution; the amount of principal and interest paid on said debt; the prospects of the institution for the coming year; and the sum paid out to the faculty and officers, which report shall be under oath, and made to the January term of court."

(*Note*: The complaints made by relators in their suggestion for prohibition concern subsequent orders and proceedings based on the theory that the court retained jurisdiction and supervision of the trust, trustees and corporation presumably under said quoted clause of the decree.)

At a certain time in 1909, at a regular term of the Buchanan Circuit Court, the secretary of the Ensworth Medical College and Hospital filed a report in said court, and in connection therewith the following entry was made of record:

"In Re Ensworth Medical College.

"Now at this above day comes T. E. Potter, secretary of the above named institution, and files his annual report of the financial condition of said institution."

At a certain time in the year 1910, at a regular term of said court, said secretary filed another annual report, and in connection therewith the following record entry appears:

"Now at this day comes Dr. T. E. Potter, secretary of the Ensworth Medical College association, and files his annual report."

About two months subsequently, and still at the same term, the court *sua sponte* entered an order appointing a board of auditors with powers and duties of visitation, reading:

"In Re Ensworth Medical College.

"Now here it is ordered that the report heretofore filed by the Ensworth Medical College be referred to W. A. P. McDonald, Graham G. Lacy and Marmaduke Morton, who are hereby ordered to audit said report with the books and vouchers of the corporation, and the said W. A. P. McDonald, Graham G. Lacy and Marmaduke Morton are further directed to examine and report upon the property owned by the colleges and the value thereof; inquire into the income of the institution from all sources; the current expenses of conducting the business carried on by the college; the indebtedness of the college, giving date of creation, rate of interest thereon, the amount of principal and interest paid on same; the prospect of the institution for the coming year; and advise as to any changes in methods of business which in the judgment will conduce to the betterment of the business and welfare of the college by the next term of this court."

The persons named acted on that order and thereafter, at the October term, 1910, to-wit, on December 17, 1910, their report was filed in court and in connection therewith the following entry made:

"In Re Ensworth Medical College.

"Now at this day comes W. A. P. McDonald, Graham G. Lucy and Marmaduke B. Morton, heretofore appointed commissioners herein, and file report."

That report is an elaborate affair and covered an inspection of the buildings, with comments by the committee on their sanitary condition and with recommendations and comments on fire escapes. It makes an appraisement of real estate and equipment, gives an audit of the books of accounts with comments on

the method of bookkeeping and drawing checks, vouchers, etc., and on the custody of the official bonds of the secretary and treasurer, a tabulated statement of income and expenditures for the year ending May, 1910, an estimate of prospective income or expenditures for the next year, a tabulated statement of the indebtedness secured by the deed of trust, showing $21,000 still outstanding, a resume of facts ascertained by the investigation touching a lease of the hospital to certain tenants, with comments thereon, an investigation of existing insurance, with comments thereon, suggestions by the visitors in relation to having at least "two laymen" on the board instead of having it composed (as it is) exclusively of physicans—which laymen, in the opinion of the committee, should be "an attorney at law," for one, and a "practical business man," for another. Finally there is appended an outline of supposed prospects for the coming year by way of prognostication, this latter of a rather pessimistic and mournful character, based on the assumption that the attitude of the State Board of Health is hostile to the institution and that the receipts are not sufficient to meet the expenses of the school as at present conducted.

Shortly before said report was filed, relators called the attention of the judge making the order for the appointment of the auditing and visitation committee to the fact that his assumption of jurisdiction in administering the trust estate and managing and controlling the corporation was in violation of the rights, duties and obligations of relators towards said trust estate as prescribed by Ensworth's will, which suggestions were by him overruled and this action was followed by the coming in of said report and placing it in the files of the case.

The petition and exhibits looking to prohibition need not be reproduced or summarized. It is enough

to say that they disclose the facts we have already set forth.

The return of Judge Mosman (adopted by his successor, Judge Rusk) sets forth with more detail the facts pleaded in the petition and contained in exhibits, admits the exercise of jurisdiction by making the orders and by having prepared and filed the reports, hereinbefore mentioned, and grounds the exercise of jurisdiction on the theory the will of Ensworth created a charitable use, a public trust, and that the court by its decree of February, 1908, retained jurisdiction by the clause hereinbefore quoted.

On such record we rule as follows:

It could not be contended that the Buchanan Circuit Court had jurisdiction to enter any order or judgment affecting any of the series of bonds secured by the deed of trust on the college and hospital grounds, or the deed of trust itself, or any creditor, or any trustee of the trust estate until such time as, by the suit of proper parties, they were brought into court by process or came into court and thereby subjected their persons and the subject-matter to its jurisdiction. They are not in court at this time for any such purpose. Anything done under the jurisdiction now exercised would be *res inter alios acta* as to them. When they are in need of and are entitled to equitable interposition, they can appeal to equity and set its powers in motion by a suit. That remedy is at hand and needs no aid from such shadowy and precarious source as the reservation of jurisdiction in the decree of February, 1908.

Conceding that the will of Ensworth created a charitable use, a public trust, and that chancery has jurisdiction over it, yet we have been pointed to no authority and know of none justifying a court of chancery without a suit directed to that end, in making orders and decrees controlling, regulating and managing such trust. A chancellor cannot proceed in that

behalf *ex mero motu,* nor may he substitute his own judicial power or discretion for the discretion or power of those trustees in whom the creator of the public trust vested title and lodged the powers of management, supervision and control. At such time as his power is invoked to construe the trust instrument, or to restrain an abuse of power on the part of such trustees, or correct a negligent performance of· duty whereby the estate is put in peril or diverted, or to remove or suspend an unfaithful trustee, or to protect and conserve the corpus of the trust estate from being dissipated or lost, he may move only at the instance of the Attorney-General who moves on behalf ·of the people, or at the instance of some other proper party, whereby he grants relief on due process of. law on giving parties their day in court. The proceedings complained of in the instant case are not of that sort.

In so far, then, as the orders already made by the chancellor, authorizing and receiving the reports of his auditors and committee of visitors, look to the supervision or management of the trust estate by way of proceedings on his own motion, we think them in excess of rightful jurisdiction, and this is so although he puts his finger on the above clause in the February decree as giving color to his authority in exercising jurisdiction. That clause was outside the pleadings and not·within their purview.

Look at the common sense of the matter. If such orders, reports and comments do *not* mean present, or look forward to future, direction and control by the chancellor then they serve no useful office at all. They merely *mark time,* reaching no end. In that view of it they are mere empty noises. Now, equity does not do or require to. be done that which is useless or futile. The legal maxim is: The law does nothing vainly; commands nothing vainly (*Lex nil facit frustra; nil jubet frustra*), and equity can borrow and use that maxim with profit.

On the other hand, if such orders, reports and comments mean present or look forward to future supervision and control by the chancellor, without any new proceeding instituted to that end, then we say this: However efficient and powerful a chancellor may be in the management of charitable uses, and however much wiser it might have been if Mr. Ensworth had given the supervision of the trust estate over to a court of chancery rather than into the hands of his named friends and their successors (on all of which we are not called upon to say anything one way or the other), yet obviously that was not Mr. Ensworth's plan. He created the trust through his will and was entitled to mold and fashion it, within legal bounds. He selected the donees of the estate and made them the donees of the trust powers conferred. Absent fraud, mismanagement or incapacity (as here), and absent a showing, on pleadings in a suit directed to that end, that the trust is impossible of execution or is about to fail, as here, his plan must not be subverted by substituting another for it. It would dry up the very fountains from which public trusts flow, which fountains are the generous dispositions of benevolent testators, if they were denied power to lay down the lines on which their trusts were to be managed, or if their wishes were subject to the unnecessary and unregulated discretion of a court of chancery.

We have so lately enunciated the principles controlling the disposition of this case in State ex rel. McManus v. Muench, 217 Mo. 124; and State ex rel. Ponath v. Muench, 230 Mo. 236, that new or further exposition is out of place. On the authority of those cases we hold the preliminary rule in prohibition should be made permanent and the writ go.

Respondent relies on Lackland v. Walker, 151 Mo. 210, and Woodward v. Mastin, 106 Mo. 324. The doctrine of the Woodward case is (p. 362) that a court

of conscience will not extend its aid except upon equitable terms imposed as the "price" of the decree. Here, it is argued, the price exacted by the chancellor was the clause retaining jurisdiction. We cannot see how that trite doctrine can be invoked to sustain the jurisdiction of the chancellor to make orders of the character made in this case. The word "price," as used in the rule, is the thing exacted of one party and given to the other in order to do equity. It is not a price exacted in favor of the court itself by retaining jurisdiction after the end is reached granting relief. In this matter the decree was not interlocutory in nature, therefore jurisdiction was not retained in order that other orders and judgments might follow at its foot to complete the relief and do rounded equity.

Nor is the Lackland case in point. In that case authority was asked to sell several tracts of land belonging to the body of a trust estate. The case, a celebrated one, dealt with the will of Henry Shaw and the establishment of the "Missouri Botanical Garden." A decree was ordered to be entered *nisi*, authorizing the sale of certain named tracts and refusing present authority to sell others. In that connection the court said (p. 269): "Of course, this denial of authority to alienate these tracts at this time is without prejudice to renewal of the application as to any or all of them, should the developments of the future and a further showing hereafter made, warrant a conclusion . . . that a sale thereof is necessary, under the rules hereinbefore indicated." Accordingly, the decree ordered entered contained this clause, *inter alia*: "and this cause is ordered to stand continued from term to term with leave to make such renewed application on reasonable notice to the then Attorney-General of Missouri, and with the right reserved unto the court to make such other and further orders or decrees or modifications hereof or supplements hereto as to it may seem meet." So that we cannot perceive

that the judgment in the Lackland case, entered on one state of facts, is authority in this case, on dissimilar facts. There a sale was ordered. Naturally the proceedings were incomplete and looked to subsequent orders, at the foot of the main decree, affirming or disaffirming the sale in whole or in part. But further (and more to the point) the decree forbids the sale of certain parcels of land at that time, under then existing conditions, thereby recognizing that a sale might become necessary in the future. Accordingly, the refusal of authority to sell those parcels was "without prejudice" and with leave to apply thereafter for such authority on certain conditions—all this in the pending suit on reasonable notice to the Attorney-General. Naturally the trial court was ordered to reserve to itself, under such circumstances, the right to make further orders or decrees in the cause.

But what other efficient supplementary orders or decrees can the chancellor make under his February decree in this case? We know of none until such time as the powers of the court are set in motion on the application of proper parties on due process. To make orders, decrees or judgments that are either not intended to be enforced or cannot be enforced, but which have the form and semblance of effective judicial orders is an excess of jurisdiction and may injure instead of aid the trust. Too many cooks spoil the broth.

Let the preliminary rule be made permanent and a writ of prohibition issue. As the original respondent, Judge Mosman, and the one substituted, Judge Rusk, were moving in a judicial capacity, they ought not to be mulcted in costs. It is necessary to the independence of the judiciary that judges be not in peril in that way. Let the relators pay the costs. It is so ordered. All concur.