## 42649. BECKWORTH v. BECKWORTH et al.

(336 SE2d 782)

Gregory, Justice.

Heirs of Charles Beckworth brought a specific performance action against Beckworth's widow to enforce a settlement agreement distributing his estate. A jury found for the heirs, and the widow now appeals. We affirm the trial court's decree.

Charles and Mildred Beckworth had been married for 16 years when he died on August 14, 1978. Charles was survived by three children from a prior marriage: Ernest Beckworth, Merle Medders and Bessie Yawn. One other son from the prior marriage had died, leaving two children: Selene and Mark Beckworth. Mark, who was 17 at the time the disputed settlement agreement was made, was the only minor among the heirs.

On September 1, 1978, all of the heirs except Mark met in a lawyer's office for a reading of Charles' will. The document provided that Mildred receive in fee simple "one-half of all real property owned by me at the time of my death, the one-half of said property which goes to her shall include the portion of said property upon which the dwelling house in which I now live is located." The remaining one-half was to be divided in four parts, with each of Charles' three children receiving one part and Selene and Mark dividing one part.

The heirs were very upset about the will. They agreed with Mil-

dred to meet at Bessie Yawn's house to see if they could agree upon another disposition. The heirs told Mildred they intended to contest the will on the ground that Charles was incompetent when he executed it. After more discussion, all of those present, including Mildred, reached an agreement whereby Mildred and each of Charles' surviving children would receive a one-fifth share of the property, while Mark and Selene would each receive a one-tenth share. Mildred claims the heirs told her the language of the will meant that unless they agreed to the will then Mildred would receive nothing at all, thus prompting her agreement by misrepresentations and fraud.

That same afternoon, all of the heirs present and Mildred agreed that they would rather sell their shares in the property to Ernest than to manage it jointly or split it among themselves. So the group returned to the lawyer's office and executed several option contracts. Under the options, Ernest had until January 10, 1979 to tender $23,800 to each party holding a one-fifth share. Selene was to receive $11,900 according to her option. Mark, who was not present, did not execute a written option. The wording of each option was the same, except that Mildred's agreement also stated she would have the right to occupy the dwelling house and the use of an additional one-and-one-half acres for garden purposes, the location of which was to be agreed upon when the option was exercised.

Two days later, Mildred retained a lawyer, but she did not tell Ernest or the other heirs of her intentions to withdraw until after the will was probated.

On November 17, 1978, Ernest tendered a cashier's check for $23,799 to Mildred. She refused the check. Ernest tendered the same amount to Mildred again on January 3, 1979, and again she refused. After the second rejection, and on the same day, Ernest tendered $23,800 to the Clerk of the Superior Court of Appling County and filed suit for specific performance. Later the other heirs joined the suit as plaintiffs.

At trial, a jury returned a special verdict answering certain questions. The jury found that there was an oral agreement between the parties as to the division of land freely and voluntarily entered into by Mildred. The jury found no misrepresentation behind the agreement. The jury also found that the heirs were entitled to have the option contract between Mildred and Ernest specifically performed. The judge entered a decree ordering specific performance. The judge also denied Mildred's motions for directed verdict and new trial.

1. Mildred contends that the settlement agreement is void because it violates the law and public policy of the state. She claims such an agreement thwarts the testator's expectation that the terms of a will should be inviolate after death unless there is a valid legal basis for disregarding the will. Further, she argues that any settle-

ment must comply with the statutory requirements prescribed by OCGA § 53-3-22 before being valid.

(a) "It is well settled that agreements among the heirs at law to distribute or divide property devised under a will, in lieu of that manner provided by the will, are valid and enforceable." *West v. Downer*, 218 Ga. 235, 241 (127 SE2d 359) (1962). Such agreements have as their consideration the termination of family controversies. Id. The agreements are supported by the public policy of furthering family harmony and avoiding lengthy litigation. See 42 ALR2d 1312 (1955). The agreements are in essence solely contractual and governed by the rules applicable to all contracts. *West*, supra.

(b) The agreement in question here is not invalid because the parties failed to follow statutory procedure provided in OCGA § 53-3-22. That section provides a method of judicial approval for agreements of contested cases involving devisavit vel non (will or no will) which reach superior courts on appeal. The effect of a decree entered by a superior court approving a family agreement is to bind the parties and stand as res judicata to subsequent litigation. See 29 ALR3d 8, 119 (1970). Where all the parties interested in the estate of a testator as heirs or beneficiaries under the will are legally competent to contract, they may settle controversies by agreement and need not seek the approval of the court under the statute. Id. at 125.

(c) Mrs. Beckworth also claims that the agreement is invalid because the executor was not a party to the agreement. She bases this claim again on OCGA § 53-3-22, which requires all parties to join in any settlement. Since we find that § 53-3-22 is not applicable to this situation, we need not reach Mrs. Beckworth's claim that an executor is a necessary party as contemplated by the terms of the statute.

(d) Mrs. Beckworth contends the heirs are estopped from raising issues regarding the distribution of Charles' estate because the matter became res judicata after entry of the November 17, 1978 judgment admitting the will to probate. Mrs. Beckworth relies on *West v. Downer*, supra, for the proposition that parties who have not challenged their acknowledgments of service and agreement to probate are bound and estopped to challenge the judgment.

In *West v. Downer*, the parties executed a settlement agreement before probate of a disputed will, and then did not contest the will. The *West* court did hold that where a will has been probated and admitted to record, all the heirs who are sui juris and parties to the contract are estopped to deny the will's validity or probate. But the plaintiffs in *West* had pled for the trial court to set aside the judgment probating the will or in the alternative to grant specific performance of the agreement. After considering the motion to set aside the judgment, the *West* court went on to consider whether specific performance could be granted. The court held that settlement agree-

ments among heirs are valid if they comply with the rules applicable to contracts. The agreement in *West* was then held invalid because it lacked mutuality.

In the Beckworth heirs' complaint, they seek only to enforce the contractual agreement, and not to set aside the judgment of the probate court, which *West* demonstrates they have no right to do. Under the analytical logic of *West*, it remains for this court to examine the Beckworth agreement to see if it complies with the law regarding contract formation. See also *Craig v. McGee*, 230 Ga. 553, 557 (198 SE2d 165) (1973), where the court affirmed the validity of a settlement agreement executed several decades after the death of the testator of the disputed will.

2. (a) Mildred claims the trial court erred in failing to grant her motion for new trial because there was never any meeting of the minds between her stepgrandson, Mark, and herself. She contends that pursuant to OCGA § 13-3-2 the agreement was incomplete and she had the right to withdraw until all the heirs, including Mark, had agreed. Thus, she argues by the time Mark had a chance to become acquainted with the agreement and make a decision, she had already withdrawn.

However, the evidence shows that at the time the agreement was signed, Mark's sister was acting in his behalf, and in essence serving as his agent. There is no evidence that Mildred or any of the other heirs entered the contract understanding that it would not be binding until Mark agreed.

The relationship of principal and agent arises whenever one person expressly or by implication authorizes another to act for him or subsequently ratifies the acts of another in his behalf. OCGA § 10-6-1. The institution of a suit by a principal in his own name is a ratification of an agent's unauthorized act. *Travelers Ins. Co. v. Ansley*, 111 Ga. App. 784 (143 SE2d 422) (1965); Restatement 2d on Agency, § 67 (1984). Thus, the trial court acted properly in finding that Mark ratified the contract, as well as the agency relationship, when he joined the suit as a plaintiff. It follows that the trial judge did not err in refusing Mrs. Beckworth's requested charge setting forth the right of a party to withdraw from a proposal at any time prior to the agreement of all the parties under OCGA § 13-3-2.

(b) Nor did the trial judge err in charging that if a beneficiary under a will is a minor he may ratify an agreement upon coming of age, and that other parties are bound by his ratification. Mark was age 16 when his grandfather died, and turned 17 just before the settlement agreement was made. He reached age 18 by the time he joined the suit as plaintiff and ratified. OCGA § 44-5-41 provides that conveyances of interests in property to or by a minor are voidable and that a minor may ratify or affirm a conveyance upon reaching the age

of majority. Also OCGA § 13-5-3 provides that exemption of a minor from contractual liability is a personal privilege and that the party contracting with a minor may not plead it unless ignorant of the party's age at the time of the contract, nor may the third person use it as a defense.

(c) In a related point, Mildred contends that the trial court erred in prohibiting her counsel from arguing to the jury that there was no agreement with Mark because he was a minor and could not have ratified the agreement because Mrs. Beckworth had withdrawn. A review of the record, however, reveals that the judge had already ruled as a matter of law on this point and that he was merely reminding counsel that he could not argue that the jury could apply a law contrary to his ruling.

3. Mildred next contends that the settlement agreement is not enforceable because it is an oral agreement for the transfer of land in violation of OCGA § 13-5-30.

(a) The statute of frauds does not require that the contract with which it deals be created in writing, but requires only that there shall be written evidence signed by the party to be charged therewith, showing that the contract was made. *Capital City Brick Co. v. Atlanta Ice &c. Co.*, 5 Ga. App. 436 (63 SE 562) (1908). It is not necessary that the writing by which the contract is to be evidenced be executed simultaneously with the making of the contract; and any writing, contemporaneous or subsequent, in which the party charged admits, over his signature, all of the terms of the contract insisted upon by the opposite party, is sufficient. Id. The statute of frauds does not require that all the terms of a contract be written down on one piece of paper, but separate memoranda will satisfy the statute where the papers contain the whole bargain and make such references to the other written papers as to enable the court to construe the whole of them together as containing all the terms of the bargain. *Industrial Welding &c. Inc. v. CIT Corp.*, 157 Ga. App. 611 (278 SE2d 50) (1981). Cf. *Baker v. Jellibeans, Inc.*, 252 Ga. 458 (314 SE2d 874) (1984).

We find that the four options executed on the day of the settlement agreement are sufficient writings to satisfy the proof requirements demanded by the statute of frauds. The options all contain the same precise legal description of the land in question. The documents demonstrate that the land has been divided in terms of one-fifth and one-tenth interests. Each gives the price to be paid for the land. Each conveys an interest to Ernest Beckworth. Each option, including Mildred's, is signed by the party to be charged. These common legal descriptions, common parties and similar fractional interests demonstrate a sufficient interconnection among the writings for them to stand together as memoranda.

(b) The trial judge did not err by charging the jury that the plaintiffs need only prove their case by a preponderance of the evidence, as Mildred contends. She claims that the proper burden of proof for plaintiffs seeking specific performance is beyond a reasonable doubt. However, the authorities she cites to support her contention hold that the beyond a reasonable doubt standard is proper when a plaintiff is seeking specific performance of an oral agreement which has been removed from the statute of frauds by performance or part performance. See *Lance v. Crane*, 214 Ga. 284 (104 SE2d 439) (1958). The parties have cited no cases, and our research has revealed none, which apply the heavier burden of proof where the oral agreement is removed from the statute of frauds by written memoranda. Because of the increased confidence the court has from the presence of the writings that the oral agreement exists and the terms are clear, we hold the proof by a preponderance of the evidence is the correct standard.

4. Mildred contends the description of the property in her option contract is too vague and renders the agreement void. The description does contain a legally sufficient description of the entire 245-acre tract. But she bases her contention on the description of her life estate that appears only in her option.

The contract provides that after the property is conveyed to Ernest, Mildred is to have a life estate in the dwelling house and an acre and a half for garden purposes, with the location of the garden plot to be agreed upon at the time of the exercise of the option.

As Mrs. Beckworth points out, ordinarily where land is so vaguely described that a writing furnishes no key to its identification, neither specific performance nor damages will be decreed in an action on a written contract. *McMichael Realty &c., Inc. v. Tysinger*, 155 Ga. App. 131 (270 SE2d 88) (1980). Also, a provision in a conveyance for a subsequent survey does not cure indefinite description. Id.

However, Ernest in the complaint stated that Mrs. Beckworth could choose a one-and-one-half acre plot anywhere on the entire 245-acre tract, and he would agree. The trial judge thus found the issue of placement of the garden plot had not ripened into a conflict between the parties, and that Mrs. Beckworth could demonstrate no harm or injury by the language of the description of the life estate. The trial court molded its decree appropriately by enforcing specific performance with a provision that Mrs. Beckworth was at complete liberty to pick the site for her garden.

5. Mrs. Beckworth also contends that the tender of payment made by Ernest was not a legal tender.

First, she claims that the full amount of the purchase price of $23,800 was never made available to her before the option expired. While it is true that Ernest tendered only $23,799 twice and was re-

fused by Mrs. Beckworth both times, he did tender the full $23,800 to the clerk of the court on January 3, 1979, seven days before the contractual option was to expire. Payments of funds into a court constitute a valid tender within the requirements of OCGA § 13-4-24. *Bank of Early v. Broun*, 156 Ga. App. 445 (274 SE2d 802) (1980).

Secondly, Mrs. Beckworth contends that Ernest was not in a position to perform his obligation of conveying a life estate because he had not yet secured title to the property from his sisters, niece and nephew, and thus could not convey what he did not own. "One may, however, contract to sell property not owned by himself, taking his chances on obtaining title prior to the date of consummation of the sale or responding in damages if he fails to do so. 'Whether or not the seller could have delivered good title on the closing date is not a question which addresses itself to the validity of the contract.'" *Horn v. Wright*, 157 Ga. App. 408, 409 (278 SE2d 66) (1981). See also *Smith v. Hooker/Barnes, Inc.*, 253 Ga. 514 (322 SE2d 268) (1984).

It follows that the trial judge did not err by refusing Mildred's request to charge that an option is a contract that must be strictly complied with by the parties seeking to enforce it within the time provided or expires and has no effect, as she contends, in that there was no evidence to support a failure to timely exercise the option.

6. Mildred contends that the settlement agreement is voidable at her election under OCGA § 13-5-5 because it was prompted by fraud and misrepresentations on the part of the other heirs. However, the jury specifically found that the agreement was not induced by misrepresentations, and was voluntarily and freely entered into by Mildred. The evidence supports this finding.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 27, 1985.

*Phillips & Bacon, Richard Phillips,* for appellant.
*T. Peyton Miles,* for appellees.