45575. COLLINS v. CITIZENS & SOUTHERN TRUST COMPANY et al.
(373 SE2d 612)

MARSHALL, Chief Justice.

Appellee, C & S Trust Company, filed a petition in the Cobb Superior Court, seeking to qualify as an appointed co-executor and co-trustee in the will of O. C. Hubert. In the petition, C & S also sought relief in the way of declaratory judgment and equitable direction.[1] In this regard, C & S states that it needs direction as to whether it is legally authorized to distribute and administer assets of the estate in accordance with an agreement of the heirs of the testator, and beneficiaries under the will, modifying the terms of the will.

Under the will, the residuary estate is composed of a trust valued at approximately $25,000,000. The remaindermen of the trust are charitable organizations engaged in the fulfillment of certain de-

---

[1] There is abundant statutory and case-law authority permitting an executor of an estate to invoke the aide of a court of equity in resolving doubt as to whether the petitioner is legally authorized to distribute and administer estate assets in accordance with the provisions of a settlement agreement, rather than those of the will. See, e.g., *Saffold v. Cheatham,* 221 Ga. 155 (143 SE2d 629) (1965); *O'Callaghan v. Bank of Eastman,* 180 Ga. 812 (1) (180 SE 847) (1935); *Wallace v. Mize,* 153 Ga. 374 (3) (112 SE 724) (1922); *Hill v. Clark,* 48 Ga. 526 (1873); OCGA §§ 23-2-91; 23-2-92; 23-4-4, and 53-12-1. See also *Crocker-Citizens Nat. Bank v. Younger,* 93 Cal. Rptr. 214 (481 P2d 222) (1971).

scribed purposes. Pursuant to statutory provisions[2] authorizing him to act as the legal representative of the rights of beneficiaries under a charitable trust, the district attorney for the Cobb Judicial Circuit was presented with the modification agreement in this case, and he consented thereto, finding it to be in the best interests of the charitable beneficiaries. The state revenue commissioner was also presented with the agreement, but he refused to consent.

## Facts

The testator died on June 2, 1986, owning approximately 200 parcels of improved and unimproved, income producing and non-income producing, real estate. Approximately 150 of these parcels are located in Cobb County.

The testator's heirs are composed of his widow — appellee Ruth S. Hubert, to whom the testator had been married since 1933 — and the four children of the Hubert marriage: appellees Richard N. Hubert, Marilyn H. Hubert, Judith H. Manning, and Deborah H. Jones. The testator's nephew, Robert H. Owen, was the scrivener of the will and was appointed as co-executor and successor co-trustee therein. He and the district attorney are the remaining appellees herein.

The testator's gross estate was valued for federal estate-tax purposes at $30,254,219. Under the will executed by the testator in 1982, there are several specific bequests with an aggregate value of $633,000; $3,118,162 is allocated in the will for payment of certain debts and administration expenses, leaving a residuary estate valued at $26,503,057.

It is Item VIII of the 1982 will, and codicils, which create a charitable - remainder trust in the testator's residuary estate. The widow is named as sole life-income beneficiary of the residuary-estate trust. C & S and the widow are named as co-trustees under the will; and the testator's son, Richard N. Hubert, as well as his nephew, Robert Owen, are named as the widow's successor co-trustees. Under the will, the income from the principal of the residuary estate is to be paid at least annually to the testator's widow for her life. Upon her death, the Hubert children are each to receive in fee simple a designated parcel of property with a current aggregate valuation of approximately $3,984,028.

The remaining assets of the residuary estate, which are valued under the will at $22,519,209, are to remain therein as a charitable - remainder trust, to be used for the purpose of "feeding starving people in the world, treating the sick who are poor and starving, and giving Bibles to those who need to know Jesus Christ."

---

[2] See OCGA § 53-12-79, which is discussed, infra.

Under Item X of the will, the trustees are to distribute the accumulated income and principal of the residuary trust to Christian organizations exempt from federal income taxes and designated by the trustees "in their sole and unfettered discretion" to accomplish the foregoing purposes. It is stated in the will that such distributions are required to take place within 21 years from the widow's death.

On July 18, 1986, appellee Robert H. Owen submitted the 1982 will for probate in common form in the Probate Court of Cobb County, and he filed an application for letters testamentary. On August 5, 1986, he submitted the will for probate in solemn form. On August 22, 1986, appellee Deborah H. Jones filed a caveat to probate of the will. On August 29, 1986, appellees Judith H. Manning and Marilyn H. Kemper also filed caveats to the will.[3] Settlement negotiations among the family then began. During this time, the widow filed an action in Cobb Superior Court to have appellee Robert H. Owen declared unqualified to serve as co-trustee and co-executor.

The modification agreement was negotiated among the family. Neither the district attorney nor the revenue commissioner participated in the negotiations. As previously stated, the district attorney consented to the agreement; the revenue commissioner refused to consent.

Under Paragraph 13 of the modification agreement, the Item VIII residuary trust is deleted from the testator's estate plan. Under Paragraph 14, a residuary estate valued at $26,085,310 is to be distributed as follows: The widow is to be given the sum of $1,080,000, as well as 50 percent of the remaining assets of the residuary estate in fee simple. The four parcels of property designated for the Hubert children under the will are to be placed in four separate trusts, with the net income to be distributed annually to the widow for her life and upon her death the four parcels to be distributed to the children in fee simple. Paragraph 14 further provides for the immediate creation of a charitable trust to be funded with the remaining residue, which is valued under the modification agreement at $12,502,655. However, prior to funding this charitable trust, there is to be deducted from the foregoing sum any extraordinary administrative compensation payable to C & S as temporary administrator.

Paragraph 9 of the modification agreement deletes Item X of the will and substitutes therefor a provision which contains, among other things, the following modifications and additions to the will: Charitable distributions are to be made in accordance with the directions of an Advisory Committee, which is composed of the four Hubert children and the widow. And, a right given to the individual co-trustees

---

[3] A panoply of alleged grounds were urged in support of the will caveats.

under the will to remove C & S "at any time and from time to time," through the appointment of another bank as successor co-trustee, is stricken. Robert H. Owen is eliminated as successor co-trustee, and Dr. I. B. Hall is appointed in his place. Richard N. Hubert's successor co-trustee is required to be a lineal descendant of the testator, and this trustee is to be elected by majority vote of the Advisory Committee.

Under the agreement, the Hubert Realty Company, which is owned by the Hubert children, is granted the right to an exclusive listing with regard to the management and sale of Georgia income-producing property, during the administration of the estate and the existence of the charitable trust; and Hubert Realty is also granted an exclusive listing with respect to the sale of any Georgia property during the existence of the charitable trust. Hubert Realty is further granted the right to receive brokerage commissions and management fees for its services, as well as the right to act as sales agent in the sales or management of any trust property not covered by the exclusive listing. Hubert Realty, Dehco, Inc. (which is also owned by the Hubert family), and one of the Hubert daughters, are given a right of first refusal to purchase certain designated property from the charitable trust. Although the charitable trust terminates within 21 years after the death of the widow under the will, the modification agreement gives the Advisory Committee the power to extend the charitable trust indefinitely.

## Georgia Statutes

OCGA § 53-12-98 provides, in pertinent part, that "no court shall have jurisdiction to modify or terminate any trust of property for charitable purposes unless the state revenue commissioner is a party to the proceedings."

This Code section is part of the "Georgia Charitable Trust Act," OCGA § 53-12-90 et seq., which was enacted in 1974. In short, this Act establishes a regulatory scheme for governmental supervision of the administration of charitable trusts. As originally enacted, the Act placed these supervisory duties in the attorney general. And, in enacting this Act, the General Assembly expressly stated that the Act was not intended to "diminish the existing powers of the Attorney General, nor shall anything herein contained diminish the scope of an Act providing for legal representation of beneficiaries under charitable trusts . . . ." Ga. L. 1974, pp. 440, 445, §15.

In 1975, the Act was amended so as to make the state revenue commissioner, rather than the attorney general, the official charged with responsibility for the administration of the Act.

## *Holdings*

1. The threshold argument advanced by the appellees on appeal is that the revenue commissioner, who is the sole appellant herein, was made a party to this litigation by C & S only out of an abundance of caution, and it is urged that his joinder was not in fact required under OCGA § 53-12-98. This latter contention is predicated on the assertion that the charitable trust described in Item VIII of the testator's will is, in effect, legally nonexistent in view of the fact that the will has not been admitted to probate. Consequently, the appellees contend that this is not a suit to "modify or terminate" a charitable trust under OCGA § 53-12-98. The appellees further contend, and the trial court agreed, that even if the revenue commissioner's joinder as a party was required here, his standing is limited to only those issues concerning the impact of the modification agreement upon state revenues.

(a) With respect to the Charitable Trust Act, neither the parties nor we have ascertained any aspect of the legislative history of the Act to aid us in the interpretation thereof.

However, it is fairly obvious that at least one of the major purposes of the Act was to establish governmental supervision over the administration of charitable trusts so as to ensure that only those entities which are, in fact, being operated for charitable purposes receive tax-exempt status under our state revenue laws.

Further, in this country, courts of equity have exercised inherent, supervisory jurisdiction over the operation of charitable trusts, as well as trust estates. See, e.g., *First Nat. Bank v. Robinson*, 209 Ga. 582 (1) (74 SE2d 875) (1953). However, under one of our most basic rules of jurisprudential procedure, it has been held that a court of equity lacks the power to initiate an action, sua sponte, so as to inquire into the management of property dedicated to a charitable use. *Jenkins v. Berry*, 122 Ky. 311 (92 SW 10) (1906); *State ex rel. Heddens v. Rusk*, 236 Mo. 201 (139 SW 199) (1911); 15 AmJur2d 158, Charities, § 135, n. 49 (1976 ed.).

A persuasive argument thus can be made that another purpose of the Act is to give the state revenue commissioner ongoing jurisdiction to supervise the administration of charitable trusts, for the purpose of protecting the interests of the charitable beneficiaries by ensuring that the trust estate is, in fact, being administered for their benefit. In this regard, we note that OCGA § 53-12-95 (a) authorizes the revenue commissioner to "investigate transactions and relationships of trustees [of charitable trusts] for the purpose of determining whether the property held for charitable purposes is properly administered."

(b) It is undoubtedly true that

[t]he universal rule is that no will can be used to prove a transfer of any interest, legal or equitable, unless it has been duly proved and admitted to record in the court having jurisdiction over its probate. 1 Perry on Trusts (7th ed.) pp. 102, 103, §§ 90, 91.

*Woo v. Markwalter*, 210 Ga. 156, 161 (3) (78 SE2d 473) (1953).

(c) Nonetheless, within the plain meaning of the English language, this proceeding does involve the modification of a charitable trust, notwithstanding the fact that the trust is one which a deceased individual sought to establish in an unprobated will, and notwithstanding additional issues raised in regard to when, or even whether, the revenue commissioner's supervision of this charitable trust will ultimately commence.[4]

Consequently, the revenue commissioner's joinder as a party to this proceeding was required under OCGA § 53-12-98.

2. The state revenue commissioner moved for a continuance at the same time that discovery requests were served, for the purpose of developing evidence, in the discharge of his statutory duties. The trial court ruled that the commissioner was not entitled to represent the interests of the charitable beneficiaries, and denied the continuance sought by the commissioner for the purpose of pursuing general discovery.

In light of the broad powers and duties of the state revenue commissioner to supervise charitable trusts in Georgia, we hold that the provisions of the "Georgia Charitable Trust Act" (Ga. L. 1974, p. 440) must be followed to effectuate their purpose, including, but, not limited to, the representation by the commissioner of the interests of the charitable beneficiaries. That, of course, entails full discovery by the state revenue commissioner. "[T]he court shall in all cases afford to the parties reasonable time for discovery procedures." OCGA § 9-11-40.

Accordingly, it was error to restrict the scope of participation and discovery by the commissioner, and to deny his request for continuance.

*Judgment reversed and case remanded. All the Justices concur, except Smith and Bell, JJ., who dissent.*

---

[4] In this regard, the appellees observe that, of course, the revenue commissioner's supervisory duties under the Charitable Trust Act do not commence until the charitable trust becomes operational. See OCGA §§ 53-12-95; 53-12-96, and 53-12-97. And, it is also pointed out that under OCGA § 53-12-100, the Act does not apply to religious corporations or organizations holding property for religious purposes.

Smith, Justice, dissenting.

I disagree with the broad interpretation placed upon OCGA § 53-12-98 by the majority. A careful reading of the "Georgia Charitable Trust Act," OCGA § 53-12-90 et seq., shows that the General Assembly intended to give the state revenue commissioner administrative duties only with regard to existing, funded, probated charitable trusts. Thus OCGA § 53-12-98 which provides that "no court shall have jurisdiction to modify or terminate any trust of property for charitable purposes unless the state revenue commissioner is a party to the proceedings[,]" refers only to probated and funded charitable trusts. It has no relevance to unprobated and unfunded declarations of trust in a will.

Looking to the statute we find the following. The commissioner is authorized to "establish and maintain a register of trustees. . .and the particular trusts under which they hold property for charitable purposes." OCGA § 53-12-92. It would be both impossible and ridiculous for the commissioner to establish and maintain a register of trustees of unprobated trusts, unless every settlor or his attorney is required to notify the commissioner each time they attempt to create a charitable trust or they change the trustee. Obviously that section along with all the other sections of the "Charitable Trust Act" apply only to on-going trusts.

The act grants the revenue commissioner the authority to investigate certain transactions and relationships of trustees "for purposes of determining whether the property held for charitable purposes is properly administered." OCGA § 53-12-95. He is also given the power to institute appropriate proceeding to "correct improper administration of a charitable trust. . ." OCGA § 53-12-97. A declaration of a charitable trust under a will cannot be administered properly or improperly until the will is probated and funded.

> No trust in real estate can be created by any declaration of trust in a will unless the will is executed in such form as that it can be allowed in a court of probate. It must be in such form as that it will pass the estate. The universal rule is that no will can be used to prove a transfer or any interest, legal or equitable, unless it has been duly proved and admitted to record in the court having jurisdiction over its probate. [Cit.]

*Woo v. Markwalter*, 210 Ga. 156, 161 (78 SE2d 473) (1953).

The purpose of OCGA § 53-12-98 is to ensure that the state revenue commissioner is made a party to a proceeding in which an on-going charitable trust is about to be modified or terminated so that he can assess the tax consequences. Nothing in OCGA § 53-12-98 creates any authority in the revenue commissioner to represent the benefi-

ciaries of charitable trusts, much less potential beneficiaries of an un-funded and unprobated declaration of trust.

The primary duty of the revenue commissioner is to administer and enforce revenue laws. See OCGA § 48-2-1. It makes sense to grant the revenue commissioner authority to oversee the administration of on-going charitable trusts so that he can ensure that the charitable trusts are being used for charitable purposes and not being used as a method of tax evasion. However it does not make sense to read into the statute any authority in the revenue commissioner to interfere with the rights of the parties under a will to modify the terms of the will in settlement of a will contest.

The family involved in this case spent approximately one year negotiating the settlement agreement. One particularly disturbing fact is that the terms of the will provided that the trust would not begin until the death of Mrs. Ruth Hubert. This has placed a great deal of pressure on Mrs. Hubert. She feels that her life is an impediment to the trust. As one of her children stated, "her profound notion has been all along that she felt that her very existence - her day-to-day living would impede and withhold a charitable purpose being carried out." The settlement agreement would allow the charitable trust to begin as soon as the agreement is probated. Settlement agreements are favored in the law and "agreements are supported by the public policy of furthering family harmony and avoiding lengthy litigation." *Beckworth v. Beckworth*, 255 Ga. 241, 243 (336 SE2d 782) (1985).

The result the majority reaches grants full discovery to the revenue commissioner of every charitable trust declared in Georgia. Even though the trusts are unfunded and unprobated the revenue commissioner now has a right to block potential settlements. This holding will only cause estates to be depleted by unnecessary litigation.

The majority's interpretation of OCGA § 53-12-98 is incorrect for another reason. The majority's interpretation of the statute will cause Georgia to become the only state which allows the state revenue commissioner to determine what is best for the state coffers and at the same time what is best for the beneficiaries of charitable trusts. The general assembly would never have intended for a state officer to be placed in a position of conflict. The revenue commissioner has a duty to collect revenue. That duty is in conflict with a duty to represent the beneficiaries under a charitable trust. The 24th verse of the 6th Chapter of Matthew expresses it best: "No man can serve two masters . . ."

Allowing the revenue commissioner unlimited discovery will only postpone the final settlement of the estate for an indeterminate length of time. Everyone knows that government bureaucracy is like a pit bull, once it takes a hold, it never turns anything loose.

DECIDED NOVEMBER 10, 1988 — RECONSIDERATION DENIED NOVEMBER 10, 1988.

Michael J. Bowers, Attorney General, Verley J. Spivey, Senior Assistant Attorney General, Grace E. Evans, Assistant Attorney General, for appellant.

William J. Linkous, Jr., Roy E. Barnes, J. Don Jones, Richard N. Hubert, for appellees.