Rel: May 31, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

————————————————

## SC-2023-0894

————————————————

**Ex parte Steve Marshall, in his official capacity as Attorney General of the State of Alabama**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Megan Carmack and Leigh Gulley Manning, individually and on behalf of minor children, Michaelyn Leigh Manning and Michael Sanders Manning**

**v.**

**Regions Bank, in its fiduciary capacity as trustee of the Mabel Amos Memorial Fund, et al.)**

**(Montgomery Circuit Court: CV-22-900830)**

_____

**SC-2023-0895**

_____

**Ex parte Steve Marshall, in his official capacity as Attorney General of the State of Alabama**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Tyra Lindsey, a minor, by and through her mother and guardian, Denese Rankin; and Steve Marshall, in his official capacity as the Attorney General of the State of Alabama**

**v.**

**Regions Bank, in its fiduciary capacity as trustee of the Mabel Amos Memorial Fund, et al.)**

**(Montgomery Circuit Court: CV-23-900219)**

MENDHEIM, Justice.

These consolidated proceedings involve the Mabel Amos Memorial Fund ("the trust"), which is a charitable trust created by the will of Mabel S. Amos ("Amos"). Generally, the trust was created for the purpose of providing financial assistance to beneficiaries -- which are chosen at the discretion of the board members of the trust through an application process -- desiring to obtain higher education. The plaintiffs in the underlying actions -- Megan Carmack and Leigh Gulley Manning

2

("Leigh"), individually and on behalf of Carmack's minor children, Michaelyn Leigh Manning ("Michaelyn") and Michael Sanders Manning ("Michael"), and Tyra Lindsey, a minor, by and through her mother and guardian, Denese Rankin ("Lindsey") -- have alleged in the Montgomery Circuit Court ("the circuit court") that the trustee and board members of the trust breached their fiduciary duties in various respects and commenced the underlying actions in an effort to, among other things, remove the trustee and the board members, have a new trustee and new board members appointed, and restore the allegedly misappropriated assets of the trust. The circuit court appointed a special master under Rule 53, Ala. R. Civ. P., and Attorney General Steve Marshall ("Marshall"), who was added as a party to the underlying actions, has petitioned this Court for a writ of mandamus directing the circuit court to vacate its order appointing a special master.

<u>Facts and Procedural History</u>

On February 11, 1993, Amos executed her will. Amos's will devised to Union Bank & Trust Company ("Union Bank") her residuary estate for the purpose of establishing two separate trusts -- the Amos Family Trust and the trust -- and named Union Bank as trustee. The Amos Family

3

Trust, which is not at issue in these proceedings, consisted of one-third of Amos's residuary estate and provided for various family members of Amos during their lifetimes. Upon the death of the last surviving beneficiary of the Amos Family Trust, any remaining assets of the Amos Family Trust are to be distributed to the trust.

Amos's will states the following concerning the trust:

"The remaining two-thirds of my residual estate shall be administered as follows:

"A. The Trust shall be known as The Mabel Amos Memorial Fund.

"B. The net income from the trust fund after payment of all costs of administration shall be expended to fund or to provide scholarships for deserving young men and women of this State, and to assist them in attending any educational institution.

"C. The recipients of these payments will be chosen by a Board consisting of at least three members. The initial Board will be comprised of two individuals selected by the partners of the law firm of Albrittons, Givhan, Clifton & Alverson and one individual selected by the Trust Committee of Union Bank & Trust Company. I have confidence and trust in the law firm of Albrittons, Givhan, Clifton & Alverson and Union Bank and it is my desire that they continue to be represented on this Board as long as it is practical and feasible. In the event any Board member dies, resigns, or is unable or refuses to act, the surviving Board members shall appoint a new Board member in his place. Such new Board member shall in all respects have the same authority and responsibility as though he had been named as one of the initial Board herein.

4

Should the surviving Board members fail to appoint a new member within sixty (60) days after the death, resignation, inability or refusal of any member to act, it shall be the duty of those surviving members to petition the presiding Judge of the Circuit Court of Montgomery, Alabama to make such appointment, upon such notice and other conditions as that Court may direct, and such appointment shall have the same effect as if made by the surviving members.

"D. In making their choice as to persons to be benefited, the Board members shall be guided by the following criteria:

"1. The character of the individual.

"2. The intelligence of the individual, which shall be above average.

"3. The scholastic record of the individual.

"4. The financial need of the individual.

"E. No part of this Trust Fund shall inure to the benefit of any private individual (except for compensation for services rendered or expenses incurred in administering the Trust), and no part of the direct or indirect activities of this Trust shall consist of carrying on propaganda, or otherwise attempting to influence legislation, or of participating in, or intervening in (including the publication or distribution of statements) any political campaign on behalf of any candidate for public office. Notwithstanding any other provision, this Trust shall not conduct any activities not permitted by an organization exempt under Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they may be amended, or by any organization contributions to which are deductible under Section 170(c)(2) of such Code and Regulations as they now exist or as they may be amended.

"F. The Trustee at the direction of the Board shall make distributions at such time and in such manner as not to subject the Trust to tax under Section 4942 of the Code. The Trustee shall not engage in any act of self-dealing, as defined in Section 4941(d), and shall not make any taxable expenditures, as defined in Section 4945(d). The Trustee shall not make any investments that jeopardize the charitable purpose of the Trust within the meaning of Section 4944 and the Regulations thereunder, or retain any excess business holdings, within the meaning of Section 4943(c).

"G. In addition to the powers set forth in Article VI below, the Trustee shall have the power to amend this Trust in any manner required for the sole purpose of insuring that distributions to the Trust qualify and continue to qualify for a charitable deduction for estate purposes at my death.

"H. In the event it is determined by the Trustee and Board that it is no longer economically feasible or advisable to continue this Trust, I direct the Trustee to distribute any remaining principal and accrued income thereto to such charitable organizations as they in their discretion shall determine, provided, however, that such organizations shall be described in Section 170(c), 2055(a), and 2522(a) of the Code."

Amos died in 1999, and her will was admitted to probate in the Montgomery Probate Court on May 18, 2000. Carmack and Leigh's third and final amended complaint stated that the trust "came into existence in 2002 after [Amos's] estate was probated and the corpus of the trust was transferred by the executor of [Amos's] estate to the trustee of the charitable trust." Even though Amos's will named Union Bank as the

6

trustee of the trust, subsequent to Amos's execution of her will, Regions Financial Corporation ("Regions Financial") acquired Union Bank. Thereafter, Regions Bank (which appears to be a distinct entity from Regions Financial) served as the trustee of the trust and administered it in conjunction with the trust's board. The parties agree that, at times relevant to these proceedings, the following individuals served as board members of the trust: Thomas Albritton, Rick Clifton, John Bell, and Drew McNees ("the board members"). At the time Marshall filed his mandamus petitions, Albritton, Clifton, and McNees served as board members; Bell is no longer a board member.

On July 7, 2022, Carmack and Leigh commenced an action in the Montgomery Circuit Court asserting numerous causes of action and seeking equitable relief, compensatory damages, and punitive damages; the circuit court assigned that action case number CV-22-900830. In their third amended complaint, Carmack and Leigh named Regions Bank and the board members as defendants. Leigh, who is the daughter of James Gulley, Amos's nephew, claims to be Amos's "sole surviving heir." Carmack is Leigh's daughter, and Michaelyn and Michael are Carmack's children and Leigh's grandchildren.

7

According to the second amended complaint filed by Carmack and Leigh, one of the assets of the trust was a piece of land that Amos had owned at the time of her death. At the time of Amos's death, the land had gas wells on it that provided some income to the trust. In 2011, however, "oil was discovered on the … property …." Carmack and Leigh's second amended complaint alleged that the land was then leased by the trust to Fletcher Petroleum Company, which installed an oil well, named "Amos 36-3," on the land. That complaint alleged that Amos 36-3 "has produced $70 million to $80 million worth of oil and gas and has the potential for another $20 million." The second amended complaint further alleged the following:

> "(12) The trust did not start off with a substantial income because they discovered there was only gas on Amos' property. However, when oil was discovered on the property the income of the trust increased drastically. According to its 2002 990 requested filings, the earliest IRS filing available for the trust, the fund was approximately $500,000, and under the law the trustees could only distribute a maximum of $19,111. Defendant Regions [Bank] distributed funds for only three scholarships that together totaled $8,336. Regions [Bank] was paid $4,354 for administering the trust.

> "(13) By 2010, the total fair market value of all fund assets was $519,400 and four scholarships were funded worth $16,302. Regions [Bank] was paid approximately $7,000 for spending five hours a week on the administration of the fund [at] a rate of $28.56 an hour.

8

"(14) By 2011, when oil was discovered on the Amos property, the value of the assets of the trust totaled more than $4.1 million. Shortly thereafter, the trust became flush with millions of dollars of oil money flowing into the trust on a regular basis.

"….

"(17) The 2011 990 filing shows Regions [Bank] was the most immediate beneficiary of the trust's new wealth. Regions [Bank] went from being paid $7,426 for five hours of work per week the year before, to $92,736 for the same approximate five hours of work on behalf of the trust. Based upon the numbers provided by Fletcher [Petroleum Company], Regions [Bank's] per hour rate skyrocketed to $356.68 an hour in 2011 from only $28.56 an hour in 2010. …"

The second amended complaint alleged that Albritton's and Bell's children received scholarships from the trust while Albritton and Bell served as board members. That complaint acknowledged that Carmack had received $72,000 in scholarships over the course of 11 years, only $4,000 of which was for her college education; the remaining $68,000 had been used to pay for her elementary, middle, and high-school education. That complaint further alleged that "Carmack has in the past been denied college money from [the] charitable trust …."

In their third amended complaint, Carmack and Leigh alleged that Regions Bank and the board members had committed "one or more of the following acts:"

9

"A. Engaged in acts of self-dealing and personal enrichment to the detriment of the trust and its intended beneficiaries;

"B. Charged excessive fees to the trust after oil was discovered on trust property and the trust became wealthy from oil revenue;

"C. Awarded scholarships to students who were not financially needy and/or not residents of the State of Alabama;

"D. Improperly disbursed funds to foundations and other entities that were not the intended beneficiaries of the trust;

"E. Allowed third parties, instead of the Board established by the settlor, to decide the recipients of scholarships;

"F. Failed to keep accurate books and records of the trust's disbursements;

"I. [sic] Diverted funds to an investment account that should have been awarded as scholarships to young men and women of Alabama;

"G. Filed Form 990-PF's with the IRS that contained false and incorrect information;

"H. After the trust became wealthy from oil revenue, covered up the award of scholarships to individuals who did not meet the criteria for a scholarship by refusing to provide the names of the scholarship recipients despite the trust's long established prior practice of disclosing of names;

"I. Other misuses and abuses that may be revealed by an examination into the administration of the trust."

10

Based on those allegations, Carmack and Leigh requested the following relief:

"7. Plaintiffs request that the court intervene in the administration of the trust pursuant to sections of 210, 706, and 405 of Alabama's Uniform Trust Code and take the following action:

"A. Appoint an independent fiduciary to conduct an audit of the books and records of the trust to determine the monetary extent to which the trustee[ and the board members] have damaged the trust;

"B. Remove the current trustee[ and] the board members and replace them with persons and a banking institution that will follow the terms of the trust and uphold their fiduciary duties, to include the appointment of Leigh Gully Manning, the sole surviving heir of Mabel S. Amos;

"C. Order that the trustee[ and the board members] be required to repay the trust for the financial loss that they have caused the trust;

"D. Order such additional relief as the court determines is appropriate, including cost[s] and attorneys' fees."

Although Carmack and Leigh had requested a jury trial in their original and previous amended complaints, they did not request a jury trial in their third and final amended complaint.

On August 5, 2022, Regions Bank filed a motion to dismiss the complaint filed by Carmack and Leigh under Rule 12(b)(1), Ala. R. Civ. P., arguing that Carmack and Leigh lacked standing to enforce the terms

of the trust and, thus, that the circuit court did not have subject-matter jurisdiction over their action. Alternatively, Regions Bank requested that the complaint be dismissed under Rule 12(b)(6), Ala. R. Civ. P., arguing that Carmack and Leigh lacked the capacity to bring their action, thereby failing to state a claim upon which relief could be granted.

On October 10, 2022, Carmack and Leigh filed their second amended complaint and added Marshall as a defendant. On December 8, 2022, Marshall filed a motion asserting that, pursuant to § 19-3B-110(d), Ala. Code 1975, "the Attorney General is the proper party-plaintiff in this action" and requesting the circuit court to enter an order "re-aligning [Marshall] as a party plaintiff …." Marshall argued that, because the trust is a charitable trust and "does not name specific charitable beneficiaries or otherwise identify or designate any person or entity expressly to receive distributions under the terms of the trust," he, as the attorney general, "has the rights of a qualified beneficiary of the trust pursuant to [§] 19-3B-110[, Ala. Code 1975] …." Marshall argued that all the claims asserted by Carmack and Leigh "arise from, concern, and relate to the trust" and that he "is the party in interest who has standing to enforce the terms of the trust."

12

On December 27, 2022, Lindsey filed a motion under Rule 24, Ala. R. Civ. P., to intervene in case number CV-22-900830. Lindsey's motion stated that she sought "to intervene in the pending action on behalf of herself and all young men and women of the State of Alabama who are permissible distributees of the scholarships that are to be awarded by the [trust]." Lindsey alleged that she met "all the necessary requirements" to receive a scholarship from the trust and that "[s]he thus has an interest in the proper management of the [trust] and the preservation of its assets." In addition to her motion to intervene, Lindsey also filed a "statement of claim," which stated, in relevant part:

> "8. [Lindsey] does not contend that she or any other potential beneficiary has a legal right to a scholarship, or that her interest in the [trust's] scholarships is greater than any other permissible distributee, and she does not seek any compensatory damages on her behalf or on behalf of the other permissible distributees. [Lindsey's] interest in this matter is only to see that the Trust be protected by removal of the current Trustee and Board members, and the current Trustee be required to reimburse the trust, with interest, for excessive trustee fees it has collected from 2002 to the present and the current Board members and a former Board member be required, jointly and severally, to reimburse, with interest, the trust for the improper scholarships to students and disbursements to third parties that violated the terms of the trust. This equitable relief will enable the [trust] to award additional and larger scholarships to penitential [sic] beneficiaries who qualify under the terms of the [trust], thus increasing [Lindsey's] chances of receiving a scholarship. As a

13

resident of Conecuh County, the county where Mabel Amos grew up and where the primary asset of the trust is located, [Lindsey] is in a unique position to represent not only her interest but that of all young men and women of the State of Alabama who are potential beneficiaries.

"9. [Lindsey] accepts that under Alabama law the Attorney General is the party who has statutory standing to enforce the terms of the charitable trust … and that [his] position in this matter is paramount. Nonetheless, [Lindsey] believes that the voice of an actual member of the beneficiary class, speaking on her behalf and on behalf of the entire beneficiary class, would also be helpful to the court in properly resolving this matter as the potential beneficiaries are the parties that will actually benefit for this action.

"10. The standing requirement in this case is met due to the A[ttorney] G[eneral]'s presence as a party plaintiff and [Lindsey] is not seeking monetary relief on her own behalf, only the protection of the Trust for the benefit for the entire class."

(Footnote omitted.) After making similar allegations to those made by Carmack and Leigh in their complaint, as amended, Lindsey requested the following relief:

"36. In order to protect the interest of the beneficiaries of the [trust], … Lindsey requests that the court exercise its equitable powers, take jurisdiction over the [trust], order pursuant to Ala. R. Civ. P. Rule 19(a) that all necessary parties be joined in this action, and that a class be certified under Ala. R. Civ. P Rule 23(b)(2) of all potential beneficiaries of the [trust]. After hearing the facts, the court should enter an order finding that the trustee and the past and current board members of the [trust] violated the terms of the trust and violated their fiduciary duties to the beneficiaries of the

14

trust by charging excessive fees, by not making proper scholarship disbursements, by not informing authorities of the mismanagement by the trustee and board, and by attempting to hide their wrongdoing. After making these findings, the Court should:

"A. Order the removal of Regions Bank as trustee and Tom Albritton, Rick Clifton, and Drew McNees as board members.

"B. Appoint a conservator for the [trust] until such time as a new trustee and board members are appointed by the court.

"C. Instruct the conservator to conduct a forensic audit to determine the exact amount of excessive fees that Regions Bank has collected from the trust and to audit the disbursements and scholarships that have been awarded to students and to third parties to determine if they met the criteria required by Mabel Amos' will. It is further requested that after reviewing and approving the forensic audit, the court:

> "(1) Order Regions Bank to repay the trust for the excessive fees it has charged the trust, with interest.

> "(2) Order Tom Albritton, Rick Clifton and John Bell, board members during the period from 2002-2019, to repay, jointly and severally, with interest, all scholarships that were awarded during this time to students who did not meet the trust's criteria for a scholarship, and all disbursements made to third parties; and that Tom Albritton, Rick Clifton, and Drew McNees repay, jointly and severally, with interest, all similar scholarships and disbursements made during the period from 2020 until the present.

15

"D. Order that the defendants pay for the costs of the conservator and forensic audit.

"E. Enter such other equitable relief as the court finds just and appropriate, including an award of attorney's fees and costs to the plaintiffs for bringing this action."

Lindsey did not request a jury trial.

On January 3, 2023, Regions Bank filed a motion in which it, again, requested that Carmack and Leigh's complaint, as amended, be dismissed for a lack of subject-matter jurisdiction, stated that it did not oppose Marshall realigning as a plaintiff in the case, and opposed Lindsey's motion to intervene on the basis that, Regions Bank argued, Lindsey did not have standing to commence an action seeking to enforce the terms of the trust.

On February 21, 2023, while her motion to intervene in case number CV-22-900830 was still pending, Lindsey commenced a new action in the circuit court, which was assigned case number CV-23-900219. Lindsey styled her filing as a "petition to remove trustees of a charitable trust and for ancillary relief" and alleged many of the same facts that she had alleged in her motion to intervene in case number CV-22-900830 concerning Regions Bank's and the board members' alleged mismanagement of the assets of the trust and the board members' alleged

16

self-dealing. Citing § 19-3B-706, Ala. Code 1975, Lindsey argued that the circuit court should remove Regions Bank as the trustee of the trust. As later amended, Lindsey requested that the circuit court "exercise its juridical powers as a court of equity, and the powers given to it by the Uniform Trust Code, to intervene in the administration of the [trust]." Lindsey further requested the following relief:

> "(a) Remove and replace the current trustee[ and board members] of the trust;
>
> "(b) Order that a special fiduciary be appointed to conduct a forensic audit of the trustee['s and board members'] handling of the affairs of the trust;
>
> "(c) Compel the trustee[ and the board members] to make full monetary redress of their fiduciary breaches and their failure to comply with the terms of the trust;
>
> "(d) Order that the net income improperly withheld from disbursements as scholarships be restated on the financial records of the trust and treated as net income rather than net assets, and these funds be disbursed to scholarship recipients;
>
> "(d) [sic] Award other relief as the Court deems appropriate and just, including attorneys' fees and costs for [Lindsey] having initiated this proceeding."

In her amended complaint, Lindsey alleged that the circuit court had "inherent powers" as a court of equity to intervene in the administration of the trust. Lindsey alleged that the circuit court had the power to

intervene in the administration of the trust under § 19-3B-201, Ala. Code 1975, and that she had the right to invoke the circuit court's power as an "interested person" under that same code section. Lindsey also asserted that the circuit court had the power to intervene in the administration of the trust under § 19-3B-706, Ala. Code 1975, and that she had the right to invoke the circuit court's jurisdiction as a "beneficiary," as that term is defined in § 19-3B-103(3), Ala. Code 1975. Lindsey did not request a jury trial.

On March 9, 2023, Marshall filed a motion to intervene in case number CV-23-900219. Citing § 19-3B-110, Marshall argued that he, as the attorney general, has the rights of a qualified beneficiary of the trust and, thus, has standing to enforce the terms of the trust. The circuit court granted Marshall's motion to intervene in case number CV-23-900219.

On April 4, 2023, in case number CV-23-900219, Marshall filed a complaint against Regions Bank and the board members. Marshall alleged:

> "8. Regions [Bank] and the board members, jointly, and severally and separately, engaged in acts of self-dealing, or breached their fiduciary and other duties to the trust by failing to prevent or prohibit self-dealing, or by permitting

18

and acquiescing in self-dealing, and engaging in other acts and omissions in violation of statutory and common law duties owed to the trust.

"9. By way of example only, and without limitation, Albritton self-deal [sic], personally profited or gained from the [trust] in violation of the [trust] terms, the Alabama Uniform Trust Code, common law, and relevant Internal Revenue Service rules and regulations. [Regions Bank] and the board [members], jointly and severally, impermissibly awarded scholarships or grants to Albritton's children, and paid or caused to be paid scholarships or grant money from the [trust] totaling $135,000 for his children to attend college at the University of Texas at Austin.

"10. These scholarship or grant awards are impermissible actions by the board members and [Regions Bank] that violate the terms of the trust, are prohibited self-dealing and private inurements, and breaches of fiduciary duties owed by [Regions Bank] and [the] board members ….

"11. Without limitation, [Regions Bank], and board members Thomas Albritton, John Bell, Rick Clifton, and or Drew McNees, jointly, or separately and severally, breached their duties owed to the trust, including fiduciary, [common-law] and or statutory duties, to prevent [the] board members from engaging in acts of self-dealing and granting themselves benefits for personal gain."

Marshall asserted against Regions Bank and the board members claims of breach of fiduciary duties, unjust enrichment, negligence, wantonness, and violation of Alabama's Uniform Trust Code, § 19-3B-101 et seq., Ala. Code 1975, as well as a claim seeking an accounting. Marshall requested compensatory and punitive damages, an accounting of the assets and

investments of the trust, as well as an accounting of the fees paid by the trust, and an injunction against Regions Bank

> "enjoining [it] from committing further breaches of [the] trust (Ala. Code § 19-3B-1001[(b)](2)(1975)); compelling Regions [Bank] to redress the breaches of trust [pleaded] above by paying money to the trust (Ala. Code § 19-3B-1001[(b)](3)(1975)); ordering an accounting of the trust (Ala. Code § 19-3B-1001[(b)](4)(1975)); appointing a special fiduciary to take possession of the trust property and administer the trust (Ala. Code § 19-3B-1001[(b)](5)(1975)); remove [Regions Bank from the position of trustee] for those reasons set forth in Ala. Code § 19-3B-706 (1975), including the fact that Regions [Bank] has committed or allowed to be committed a serious breach of trust; and that Regions [Bank] has failed persistently to administer the trust (Ala. Code § 19-3B-1001[(b)](9) (1975))."

Marshall did not request a jury trial.

On April 26, 2023, the circuit court entered an order consolidating case numbers CV-22-900830 and CV-23-900219.

On May 26, 2023, Regions Bank, Bell, and McNees filed a motion to dismiss Lindsey's action against them. Regions Bank, Bell, and McNees argued that Lindsey lacked standing to pursue an action seeking to enforce the terms of the trust and failed to "offer any cognizable legal theory permitting [her] to pursue her claims in this proceeding" and, thus, requested that her action be dismissed under Rule 12(b)(1) and (6), Ala. R. Civ. P.

20

The circuit court held a hearing on November 2, 2023, but the parties have not produced a transcript of that hearing. Following the hearing, on November 7, 2023, the circuit court entered an order appointing a special master under Rule 53, Ala. R. Civ. P. On November 14, 2023, Marshall filed a motion to "reconsider or vacate" its order appointing a special master. Marshall argued that there was no need for the circuit court to have appointed a special master because, he said, Regions Bank, Albritton, and Clifton "had settled the claims in the trust litigation. The settlement makes the trust whole, addresses administrative matters, and does not impose any costs on the [trust]." Additionally, Marshall argued that the circuit court's order appointing a special master "runs afoul of Rule 53's cautionary language that disfavors appointment of masters, and is further infirm for the reasons articulated in Ex parte Alabama State Pers[onnel] Board, 54 So. 3d 886 (Ala. 2010), and Ex parte Alabama Medicaid Agency, 267 So. 3d 326 (Ala. Civ. App. 2018)."

On November 20, 2023, the circuit court entered the following amended order appointing a special master under Rule 53:

"It has become apparent that the appointment of a Special Master is necessary to hear pending motions and

21

other matters and make recommended orders. Pursuant to Rule 53, A[la]. R. Civ. P., it is hereby ORDERED that JUDGE CHARLES PRICE is appointed Special Master to hear all matters in the above-styled case.

"In addition, JAMES C. WHITE, SR., CPA, ... is appointed to review all matters associated with accounting, computation, examination of books and records relating to the trust, as those issues shall be further identified and defined by the Special Master upon review of the pleadings and upon hearing the parties' dispositive motions, all as provided by the law of Alabama governing the administration of trusts.

"The Special Master shall have the rights, powers, and duties provided in Rule 53 and may adopt such procedures as are not inconsistent with that rule, with the law of Alabama governing the administration of trusts and with this or other orders of the court.

"The Special Master shall make findings of fact, as necessary, and shall recommend conclusions of law with respect to matters presented by the parties, including a recommended conclusion of law as to which purported plaintiffs have standing to bring claims in this matter, and [he] shall report such findings of fact and such recommended conclusions of law expeditiously to the court.

"Compensation at rates mutually agreeable to the Special Master and the parties shall be paid from the ... trust to the Special Master and Accountant on a monthly basis, together with reimbursement for reasonable expenses incurred by the Special Master. If the parties and the Special Master or Accountant are unable to agree upon the compensation, it shall be fixed by the court. The Special Master and Accountant shall, within five (5) days, inform the court if he and the parties have agreed upon [his] compensation.

"If practicable, the Special Master shall conduct conferences by telephone or video conference."

(Capitalization in original.)

On December 7, 2023, Marshall filed with this Court petitions for a writ of mandamus directing the circuit court to vacate its order appointing a special master. This Court consolidated the mandamus proceedings.

## Standard of Review

This Court set forth the following applicable standard of review in Ex parte Alabama State Personnel Board, 54 So. 3d 886, 891 (Ala. 2010):

> "'"'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"'
>
> "Ex parte Novartis Pharm. Corp., 975 So. 2d 297, 299 (Ala. 2007)(quoting Ex parte Perfection Siding, Inc., 882 So. 2d 307, 309-10 (Ala. 2003), quoting in turn Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995)).
>
> "'"'In cases involving the exercise of discretion by an inferior court, [the writ of] mandamus may issue to compel the exercise of that discretion. It may not, however, issue to control or review the exercise of discretion, except in a case [where the trial court has exceeded its discretion].'"' Ex parte Monsanto Co., 794 So. 2d 350, 351-52 (Ala. 2001) (quoting Ex

23

parte Auto-Owners Ins. Co., 548 So. 2d 1029, 1030 (Ala. 1989), quoting in turn Ex parte Edgar, 543 So. 2d 682, 685 (Ala. 1989))."

Discussion

Initially, we note that the parties have raised the issue of standing before the circuit court and before this Court. This Court has stated that "[t]he question of standing implicates the subject-matter jurisdiction of the court. Ex parte Howell Eng'g & Surveying, Inc., 981 So. 2d 413, 419 (Ala. 2006)." Bernals, Inc. v. Kessler-Greystone, LLC, 70 So. 3d 315, 319 (Ala. 2011). Accordingly, we will begin our analysis by first determining whether the circuit court obtained subject-matter jurisdiction over the consolidated cases below.

The trust is a charitable trust created for the public purpose of providing financial assistance to undefined beneficiaries. There is no question that the circuit court has jurisdiction to enforce the terms of the trust. In State ex rel. Carmichael v. Bibb, 234 Ala. 46, 51, 173 So. 74, 78 (1937), this Court stated the following concerning a circuit court's jurisdiction over charitable trusts:

"It is not to be doubted … that while courts of equity have original and inherent jurisdiction, independent of the statute of Forty-Third Elizabeth and of the prerogative power to sustain and enforce charitable trusts, this power and

24

jurisdiction must in the nature of things lie dormant until its interposition is properly and timely invoked. State ex rel. Heddens v. Rusk, 236 Mo. 201, 139 S.W. 199 [(1911)]. When so quickened into action, the court, in the plentitude of its jurisdiction, will assume control of the trust, and administer it in accordance with its terms."

The question, then, becomes who may properly invoke the jurisdiction of the circuit court to administer the trust according to its terms when, as in the present case, the trust does not have a defined beneficiary.

Section 19-3B-110 provides the answer in these cases. Section 19-3B-110 states, in pertinent part, as follows:

"(b) A charitable organization expressly designated to receive distributions under the terms of a charitable trust has the rights of a qualified beneficiary under this chapter [i.e., the Alabama Uniform Trust Code] if the charitable organization, on the date of the charitable organization's qualification is being determined:

"(1) is a distributee or a permissible distributee of trust income or principal;

"(2) would be a distributee or permissible distributee of trust income or principal upon the termination of the interests of other distributees or permissible distributees then receiving or eligible to receive distributions; or

"(3) would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.

"....

25

"(d) The Attorney General of this state has the rights of a qualified beneficiary when the charitable interest to be represented would qualify under subsection (b) but no charitable organization has been expressly designated to receive distribution under the terms of a charitable trust."

The "Uniform Comment" to § 19-3B-110 provides the following explanation of the text of § 19-3B-110: "Charitable trusts do not have beneficiaries in the usual sense. However, certain persons, while not technically beneficiaries, do have an interest in seeing that the trust is enforced. In the case of a charitable trust, <u>this includes the state's attorney general</u> ...." (Emphasis added.)

Under § 19-3B-110(d), Marshall, as the Attorney General of Alabama, has the rights of a qualified beneficiary of the trust because "no charitable organization has been expressly designated to receive distribution under the terms of the charitable trust." As a qualified beneficiary, Marshall has standing to invoke the jurisdiction of the circuit court to assume control of the trust and to administer it in accordance with its terms. Marshall properly invoked the jurisdiction of the circuit court by filing a complaint in the consolidated cases below, and the circuit court has properly assumed control of the trust.

26

Having determined that the circuit court's jurisdiction was properly invoked by Marshall, we can proceed to consider the merits of Marshall's arguments pertaining to the circuit court's referral of the case to a special master.[1] In his mandamus petitions before this Court, Marshall argues that the circuit court exceeded its discretion in issuing its November 20, 2023, amended order referring all matters in these cases to a special

_____

[1]We acknowledge that the parties have also raised arguments as to the "standing" of Carmack, Leigh, and Lindsey to assert their claims against Regions Bank and the board members. We need not address that question, however, because we have already determined that the circuit court has jurisdiction over the cases below based on Marshall's pleadings, and, thus, we are certain that we have jurisdiction to consider Marshall's mandamus petitions pertaining to the circuit court's order appointing a special master. In other words, because the circuit court had subject-matter jurisdiction over the cases at the time that it entered its November 20, 2023, amended order appointing a special master, that order was not void and, thus, is capable of supporting Marshall's mandamus petitions. Cf. Brooks v. Carter, [Ms. CL-2022-1178, Sept. 1, 2023] ___ So. 3d ___, ___ (Ala. Civ. App. 2023)("[W]hen a circuit court without subject-matter jurisdiction purports to enter any judgment other than one dismissing the action for lack of jurisdiction, that judgment is void and will not support an appeal. See Singleton v. Graham, 716 So. 2d 224, 226 (Ala. Civ. App. 1998). Instead, that judgment must be vacated or set aside and the appeal must be dismissed. Singleton, supra; Bernals[, Inc. v. Kessler-Greystone, LLC, 70 So. 3d 315, 319 (Ala. 2011)]."). The circuit court may still consider the arguments raised by the parties related to whether Carmack, Leigh, and Lindsey have "standing" or if they have failed to state a claim. See Ex parte BAC Home Loans Servicing, LP, 159 So. 3d 31 (Ala. 2013)(discussing the difference between standing and whether a party has failed to properly state a cause of action).

master under Rule 53. Marshall argues that the circuit court did not make the findings necessary to appoint a special master under Rule 53.

In <u>Ex parte Alabama State Personnel Board</u>, 54 So. 3d at 892-93, this Court set forth the following relevant law concerning Rule 53:

"Rule 53, Ala. R. Civ. P., provides that a court may appoint a special master. Rule 53(b), Ala. R. Civ. P., sets out the occasions upon which the appointment of a special master is appropriate and provides as follows:

"'(b) Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.'

"The appointment of a special master lies within the sound discretion of the trial court, and its decision to appoint a special master should not be reversed unless the trial court clearly exceeds that discretion. <u>Hall v. Mazzone</u>, 540 So. 2d 1353 (Ala. 1988). In a jury trial, a case should be referred to a special master only if the issues are 'complicated'; those matters to be tried without a jury are to be referred to a special master only upon finding of 'some exceptional condition' requiring such referral, unless a claim requires an accounting or a difficult computation of damages. We emphasize the sentence in Rule 53(b) that precedes the applicable standard (jury or nonjury) that tells us that the reference to a special master is the exception not the rule. 'Because of the increased costs, likelihood of delay, and possible lack of confidence in the outcome, the power to order a reference is to be sparingly exercised. See <u>Adventures in</u>

28

Good Eating, Inc. v. Best Places to Eat, Inc., 131 F.2d 809, 815 (7th Cir.1942).' Committee Comments on 1973 Adoption of Rule 53."

As is clear from the above-quoted legal principles, different standards apply in determining the appropriateness of referring to a special master actions to be tried with a jury, actions to be tried without a jury, and actions seeking an accounting. Accordingly, to properly determine if the circuit court's referral of all the matters in these cases to a special master was appropriate, we must first determine whether the cases were to be tried by a jury or not, and we must also determine whether an accounting has been requested. We can then analyze the circuit court's referral under the applicable standards.

Marshall, in his petitions, alleges that Carmack and Leigh requested their the action be tried by a jury. In so asserting, Marshall directs this Court's attention to Carmack and Leigh's second amended complaint, which did, in fact, request a jury trial. Marshall, however, ignores the fact that Carmack and Leigh filed a third, and final, amended complaint that did not request a jury trial. Carmack and Leigh and Lindsey, in their respective answers filed with this Court, expressly state that neither Marshall's, nor "Lindsey's, nor Carmack's [and Leigh's]

29

pleadings now requests a jury trial. All factual issues are to be tried non-jury." Carmack and Leigh's answer, at 14; Lindsey's answer, at 13. Marshall does not make any mention in his reply brief before this Court of whether the actions below are to be tried with or without a jury. Based on our review of the pleadings and the parties' assertions before this Court, it appears that the actions below are to be tried without a jury. The claims asserted by Marshall against Regions Bank and the board members in his complaint alleged breach of fiduciary duties, unjust enrichment, negligence, wantonness, and violation Alabama's Uniform Trust Code. Therefore, insofar as the circuit court referred to the special master those matters to be tried without a jury, "those matters … are to be referred to a special master only upon finding of 'some exceptional condition' requiring such referral …." Ex parte Alabama State Pers. Bd., 54 So. 3d at 892-93.

In the present cases, the circuit court did not indicate that "some exceptional condition" required the referral of the entire cases to a special master. In fact, the circuit court's order makes no mention of the necessity of such a finding to justify the referral of the entire cases to a special master. The allegations in Marshall's complaint are straight

30

forward and easily understandable. Our review of the materials submitted by the parties do not indicate that any such "exceptional condition" exists in these cases to support the circuit court's referral of the entire cases to a special master. There appears to be no basis to support the circuit court's referral of the cases, including, among other things, motions to dismiss and determinations of liability, to a special master. Accordingly, we conclude that the circuit court exceeded its authority in referring the entire cases to a special master.

We note that Marshall also requested an accounting below. In his complaint, Marshall stated:

> "Due to [Regions Bank's alleged] wrongful conduct …, including both errors and omissions on the part of Regions [Bank], without limitation [Marshall] prays for an accounting of all fees charged by Regions [Bank], all income, return on princip[al], assets owned by the trust, expenses paid during the relevant period, scholarship and or grant awards to individuals and institutions, and such other information the court determines relevant to the enforcement of the trust."

The circuit court is not required to demonstrate the existence of an "exceptional condition" to refer "matters of account and of difficult computation of damages." Hall v. Mazzone, 540 So. 2d 1353, 1355-56 (Ala. 1988). However, "[t]he fact that an accounting may be required does not in itself offer a basis for reference to a special master. Hanover Ins.

31

Co. v. Emmaus Mun. Auth., 38 F.R.D. 470 (E.D. Pa. 1965)." Ex parte Alabama State Pers. Bd., 54 So. 3d at 896.[2] Wright and Miller in their treatise on federal procedure state that "matters of account are not to be sent routinely to a master and a reference should be refused by the trial judge if the accounting is not complicated." 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2605 (3d ed. 2008)(citing Helfer v. Corona Prods., Inc., 127 F.2d 612, 614 (8th Cir. 1942), which states that "'[a] reference to a master shall be the exception and not the rule,' and [that] where, as in this case, nothing more was involved in the suit than to ascertain and adjudicate how much, if anything, this small defendant company owed its sales agent in respect to the contract it had with him, and where all the testimony was taken

_____

[2]This Court explained its reliance upon federal precedent in interpreting Rule 53 as follows:

> "Because the Alabama Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, federal cases construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure. Borders v. City of Huntsville, 875 So. 2d 1168, 1176 n.2 (Ala. 2003). Rule 53, Ala. R. Civ. P., is substantially similar to Rule 53, Fed. R. Civ. P."

Ex parte Alabama State Pers. Bd., 54 So. 3d at 893.

in less than four days of hearings, the duty of trying and deciding the case and of filing the findings of fact and conclusions of law supporting the decree was upon the court").

In the present cases, the circuit court offered no explanation as to why it believed that a referral of the accounting of the trust was required or what about conducting such an accounting would be complicated. The circuit court did not specify the parameters of the referred accounting. Based on the parties' allegations, it appears that the accounting would consist of determining the assets of the trust and its expenditures, including scholarships awarded and administrative fees paid. There is nothing before us indicating that the circuit court would not be able to ascertain the assets and expenditures of the trust through the typical discovery process, which, of course, the circuit court is perfectly capable of overseeing.

Regardless, even if the circuit court did not exceed its discretion by referring the accounting of the trust, Wright and Miller's treatise notes that "[t]he fact that a [special] master's assistance with an accounting may be necessary does not justify reference of all the other issues in the case." 9C Wright & Miller, Federal Practice and Procedure § 2605. In

33

other words, even if a circuit court properly refers an accounting to a special master, that does not mean that every other matter in the case unrelated to the accounting may also be referred to a special master without consideration of the requirements set forth in Rule 53. Each matter referred to a special master must satisfy the applicable standard. In this case, as discussed above, the circuit court's referral of the matters to be tried without a jury do not meet the applicable standard because there is nothing indicating that those matters involve an "exceptional condition." Therefore, even if the circuit court's referral of the accounting in these cases was appropriate and within its discretion, such a referral does not justify the referral of the other matters to be tried without a jury.

In Ex parte Alabama State Personnel Board, this Court, relying upon La Buy v. Howes Leather Co., 352 U.S. 249 (1957), as an analogous case, described a broad and unsubstantiated referral to a special master similar to the one in these cases, as follows:

> "In La Buy v. Howes Leather Co., 352 U.S. [249,] 256 [(1957)], the Supreme Court affirmed the appellate court's issuance of a writ of mandamus compelling the district court to vacate its order of reference of two complex antitrust cases to a special master for trial. The Court stated:

"'[The trial judge] referred both suits to a master on the general issue. Furthermore, neither the existence of the alleged conspiracy nor the question of liability vel non had been determined in either case. These issues, as well as the damages, if any, and the question concerning the issuance of an injunction, were likewise included in the references. Under all of the circumstances, we believe the Court of Appeals was justified in finding the orders of reference were an abuse of the petitioner's power under Rule 53(b)[, Fed. R. Civ. P.]. <u>They amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation</u>.'"

54 So. 3d at 896-97 (emphasis added). In the present cases, by referring to the special master all matters without satisfying the applicable standards for doing so, the circuit court abdicated its judicial function and, thus, exceeded its discretion.

In their respective answers filed with this Court, Carmack and Leigh and Lindsey argue that, even if it exceeded its discretion by referring all the matters in these cases to a special master under Rule 53, the circuit court had the authority to appoint a special master under § 19-3B-201, § 19-3B-706, and § 19-3B-1001, Ala. Code 1975. The text of those statutes does not mention a special master, but those statutes do give the circuit court authority to oversee the administration of a trust,

35

which, presumably, includes the appointment of a special master. But there is nothing in those statutes indicating that the appointment of a special master may be done independent of Rule 53. Those statutes generally empower a circuit court to oversee the administration of a trust, which would include appointing a special master in appropriate cases, but Carmack, Leigh, and Lindsey have not cited any authority indicating that such an appointment need not comply with Rule 53. Their argument is not persuasive.

Carmack, Leigh, and Lindsey also argue that Marshall is estopped from arguing that the circuit court exceeded its discretion in appointing a special master under Rule 53 because Marshall, in his complaint, requested that the circuit court appoint a special fiduciary to take possession of the trust property and administer the trust and conduct an accounting of the trust. Carmack, Leigh, and Lindsey generally allege that Marshall "is playing games with the [circuit] court" by challenging the circuit court's appointment of a special master even though he requested the appointment of a special fiduciary to protect the assets of the trust pending resolution of the underlying litigation. Carmack and Leigh's answer, at 25; Lindsey's answer, at 24. Carmack, Leigh, and

36

Lindsey's argument is not persuasive. They have not offered any explanation as to how Marshall's request for the appointment of a special fiduciary to protect the assets of the trust pending resolution of the underlying litigation is inconsistent with Marshall's objection to the referral of the entire cases to a special master. Nor have Carmack, Leigh, and Lindsey provided any explanation as to why Marshall should be estopped from objecting to the referral to a special master of the accounting of the trust simply because Marshall requested an accounting. As discussed above, a circuit court is perfectly capable of conducting an accounting without appointing a special master, and Marshall's request for an accounting is not inconsistent with his objection to the referral of the entire cases to a special master.

## Conclusion

In summary, the circuit court's order referring all matters in these cases to a special master exceeded its discretion. As to the referral of the matters to be tried without a jury, the circuit court did not indicate that an "exceptional condition" necessitated the referral. See Rule 53(b). As to the referral of the accounting, the circuit court did not indicate that the accounting would prove complicated in some way, and, even if the

37

accounting was properly referred to a special master, the referral of an accounting does not justify the referral of all the other matters in the cases. Accordingly, we grant Marshall's petitions and order the circuit court to vacate its November 20, 2023, amended order referring the cases to a special master.

SC-2023-0894 -- PETITION GRANTED; WRIT ISSUED.

SC-2023-0895 -- PETITION GRANTED; WRIT ISSUED.

Parker, C.J., and Shaw, Wise, Bryan, Sellers, Stewart, and Mitchell, JJ., concur.

Cook, J., recuses himself.